[Crim. No. 3338. First Dist., Div. Two. June 28, 1957.]

THE PEOPLE, Respondent v. RALPH GIBSON, Appellant.

O. A. Goth, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

LERNHART, J. pro tem.*—This is an appeal from a judgment of conviction and order denying a motion for a new trial. Ralph Gibson, defendant and appellant, was found guilty by a jury of violation of section 288a of the Penal Code. Probation

*Assigned by Chairman of Judicial Council.

was denied and appellant was sentenced to imprisonment in the state prison.

The complaining witness was the stepdaughter of appellant who, at the time of the alleged offense, was 15 years of age and resided with her mother and appellant.

At about 7 p.m. on the evening of August 19, 1956, appellant, having finished the liquor available in his home, decided to go to the store to purchase more. He took his stepdaughter, Susan, with him. They drove to Brentwood in the family car, a four door 1954 Dodge, purchased some beer and whiskey. They then drove around for awhile, appellant eventually parking on Skyline Boulevard. Appellant drank some beer and they discussed why Susan would not call him father. There is a conflict in the testimony as to who kissed whom at this time.

After they left this place, they continued driving until they reached the coast highway. They headed toward San Francisco, and appellant turned around and parked. It was a dark, foggy night and the traffic was light. Appellant started drinking again and continued questioning Susan about why she would not call him father. Susan testified that the acts constituting the charged offense took place here, and that thereafter she kicked the car door open and got out. She ran up the road. A car driven by Mr. John K. Murphy was approaching and Susan stopped them. It was about 12:30 a.m. Susan was crying and appeared to be scared. She got into Murphy's car. Appellant backed up toward the car, but Murphy pulled around his car and left.

On August 20, 1956, at about 2 p.m., Officer Bernard Esparza went to the home of appellant and Susan made a statement substantially similar to her testimony at the trial. The officer asked appellant if Susan's statement was true and the answer was "yes." Later, at the county jail, appellant told Deputy Sheriff O'Brien that he had made that statement only to satisfy his wife. Appellant testified in court that Susan would go to church and Sunday school and did not lie.

Appellant's contention was that he kept Susan out that late to find out why she would not enter Mori's Point earlier in the day with his wife and him. He contends that he did not fondle Susan and had told her to get a ride since it was too foggy and he had been drinking too much to drive. He also states that it was impossible for him to commit the act in the position described by Susan because of a lack of flexibility in his right leg due to a prior fracture.

Appellant's first contention is that the prosecuting attorney committed prejudicial misconduct in his argument to the jury.

a. By reference to the failure of appellant's wife to testify.

The prosecution attempted to call the appellant's wife as a witness. Appellant objected on the ground that she was not a competent witness. In his closing argument to the jury, the prosecutor commented as follows:

"Now of course, we couldn't bring you the testimony of the mother. It is a rule of law that a wife does not have to testify against the husband, if the husband so requests. We have no question of a rule of law, and so we haven't the testimony of the mother to say what was said, at that time.

"MR. GOTH: I am going to object to that as prejudicial misconduct, making any reference whatsoever as to the wife and why she did not testify, and I have authorities for that particular point.

"I ask that the jury be instructed to disregard it.

"THE COURT: Disregard it. Stay away from it, Mr. Carey."

Appellant contends that the statement gives the implication that he alone prevented his wife from testifying and thereby prevented the jury from hearing the whole story. Appellant has cited several cases to sustain his contention that remarks such as those which occurred in this matter constitute error. (*People* v. *Piazza*, 84 Cal.App. 58 [257 P. 592]; *People* v. *Klor*, 32 Cal.2d 658 [197 P.2d 705]; *People* v. *Walden*, 129 Cal.App. 71 [18 P.2d 105]; *People* v. *Harmon*, 89 Cal.App.2d 55 [200 P.2d 32].)

However, while the remarks were criticized by the court under the facts of the cases, they were held not to be prejudicial. In several cases, the error was cured by an instruction to the jury. In the case at bar, while no formal instruction was given, the jury was told to disregard the statements.

In *People* v. *Walden, supra,* the court stated at page 76:

"Perhaps no criminal case is ever tried where the ideal is maintained unqualifiedly. Naturally in the heat of contest and in the enthusiasm of argument the strict rules of conduct are sometimes overstepped. Were all such cases reversible therefor, the administration of criminal law would break down completely through niceties of requirements too fine for practical application. The true test is whether or not the defendant has been given a fair trial, the law and the ordinary and common traits of human nature considered . . ."

Appellant has cited *People* v. *Wilkes,* 44 Cal.2d 679 [284 P.2d 481], a case which the court did reverse because of com-

ments by the prosecution on the fact that the wife did not testify. However, in that case neither side called the wife as a witness and the court allowed the comments in over an objection by the defense.

■ Under the facts of this case, the wife was a competent witness under Penal Code, section 1322. This is conceded by appellant. Penal Code, section 1322, reads as follows:

"Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except . . . in cases of criminal violence . . . upon the child or children of one by the other . . ."

In *People* v. *James,* 9 Cal.App.2d 162 [48 P.2d 1011], the court, in describing the word "violence," refers to *People* v. *Bradbury,* 151 Cal. 675 [91 P. 497]. That case stated that violence is synonymous with physical force, that the kind of physical force is immaterial; it may consist in the taking of indecent liberties with a woman or laying hold of and kissing her against her will.

In the case at bar, appellant was convicted of a violent act against his wife's daughter. Thus, his wife was a competent witness.

■ Since not only was the wife a competent witness, but the court directed the jury to disregard the comments made by the prosecution, there was no prejudice to the appellant.

b. By reference to the failure of appellant to testify at the preliminary examination.

In his argument to the jury, the prosecuting attorney commented on the fact that there had been a preliminary hearing at which appellant failed to testify. Appellant objected to this comment. The court sustained the objection and then consented to the comment since the question had been asked and answered on cross-examination. No objection had been made by appellant at that time.

While there is no authority relating to comments on the refusal to testify at preliminary hearings, appellant cites *People* v. *Montgomery,* 47 Cal.App.2d 1 [117 P.2d 437], where the court held that a witness may be asked whether or not he testified before a grand jury preliminary to indictment. The court limited this question to impeachment purposes only. Appellant contends that the prosecution's statements in the case at bar were not for the purpose of impeachment, but were relating his failure to testify to his guilt or innocence. It is appellant's contention that, if the question and comments were proper for impeachment purposes only, a duty rested upon the prosecu-

tion attorney and the court to explain that limited purpose to the jury.

Respondent distinguishes the Montgomery case, *supra*. In that case, the defendant had requested the court to give an instruction limiting the testimony and the court had refused. In the case at bar, appellant never requested such an instruction. It is respondent's contention that in the absence of a request the trial court is not required to give an instruction limiting the purposes for which evidence can be considered. (*People* v. *Holbrook,* 45 Cal.2d 228, 233 [288 P.2d 1].)

Respondent further argues that his statements do not indicate any other purpose than impeachment and that appellant objected before he was able to explain why he was mentioning the preliminary examination.

■ This court concludes that the evidence relating to testifying at a preliminary examination is permissible for impeachment purposes only. However, under the facts of this case, appellant should have objected to the admission of the testimony on cross-examination and should have requested an instruction limiting the purpose of the evidence at that time or at the latest when the evidence was referred to in the closing argument. Since appellant did not request such an instruction in either instance nor submit a prepared instruction on this point, he has waived his right and cannot claim it on appeal. In *People* v. *Grace,* 88 Cal.App. 222, 234 [263 P. 306], the court stated,

". . . We have examined the record and find that no such instruction was requested by the court, and hence the appellant at this time is not in position to find fault, if perchance the jury failed to consider the evidence for the limited purpose offered."

We agree with appellant's contention that in a case such as this, where there is little evidence to aid the jury, misconduct by the court or counsel can play a vital factor in determining whether or not a fair trial was had. But even in these cases, the defense counsel must make his objections when the error is committed and not later on appeal. It is the court's opinion that there was no prejudice to the appellant in this instance.

Appellant's second argument is that the trial court abused its discretion in denying the jury an opportunity to view the automobile in question.

Appellant requested that the jury be allowed to view the automobile and that he be allowed to demonstrate that it would be impossible for him, because of his size and injured leg, to get into the positions described by the complaining witness.

The court refused, but suggested that this might be possible if a facsimile of a human body were provided. Appellant then obtained a balloon type model of the human form approximately the size of the complaining witness. This balloon was without legs. The court again refused to allow the jury to observe appellant in the automobile. Appellant contends that this was a clear abuse of discretion on the part of the trial court.

Respondent argues that it is within the discretion of the trial court to allow the jury to view the place where the alleged offense occurred. He cites Penal Code, section 1119, as authority. That section reads as follows:

"When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, or any personal property which has been referred to in the evidence and cannot conveniently be brought into the courtroom, it may order the jury to be conducted . . . to the place, or to such property, which must be shown to them . . ."

It is contended that the use of the word "may" indicates that the court either has entire discretion or that it will not be overturned unless there is clear abuse.

The size of the front seat of an automobile is of common knowledge and it was clearly within the court's discretion to refuse the request that the jury view it. (*People* v. *McFadden,* 2 Cal.App.2d 228 [37 P.2d 1044].)

The court's refusal of appellant's offer to demonstrate the alleged positions with the aid of a legless balloon was also within its discretion. A legless, weightless balloon clearly does not represent an adequate substitute for a human body.

The court concludes that no prejudicial error was committed.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.